IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| COUNTY HALL INSURANCE COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JOSE RIVERAS; RIVERAS TRUCKING INC.; and RUBEN STORY<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>2:25-cv-00971-RJS-JCB<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

Before the court are Plaintiff County Hall Insurance Company (County Hall)'s and Defendant Ruben Story's Cross-Motions for Summary Judgment.[1] For the reasons discussed below, the court GRANTS County Hall's Motion and DENIES Story's Motion.

## BACKGROUND[2]

This case arises from a collision between an automobile and a commercial truck. County Hall is a commercial auto liability insurance company.[3] Defendant Jose Riveras is the sole

[1] Dkt. 17, *Defendant Story's Motion for Summary Judgment* (*Story Motion*); Dkt. 31, *Plaintiff's Cross-Motion for Summary Judgment* (*County Hall Motion*).

[2] When reviewing cross-motions for summary judgment, the court provides a neutral summary of the facts. *See Stella v. Davis Cnty.*, 1:18-cv-002, 2019 WL 4601611, at *1 n.1 (D. Utah Sep. 23, 2019). The court views the facts "'in the light most favorable to the nonmoving party'" and 'draw[s] reasonable inferences therefrom' while evaluating the motions in turn." *Id.* (quoting Doe v. City of Albuquerque, 667 F.3d 1111, 1122 (10th Cir. 2012)).

[3] *Story Motion* ¶ 3; Dkt. 37, *Plaintiff's Opposition to Defendant Story's Motion for Summary Judgment* (*Story Opposition*) at 5.

owner of Defendant Riveras Trucking, Inc., a trucking corporation based in Taylorsville, Utah.[4] Defendant Story is a judgment creditor of Jose Riveras and Riveras Trucking.[5]

## I. Legal and Regulatory Framework

In 1980, Congress passed the Motor Carrier Act (MCA) in an effort to deregulate the commercial trucking industry and improve quality of service.[6] Out of concern that the loosened regulatory environment could create public safety risks, Congress included provisions to increase liability protections for motor carriers.[7] Specifically, the MCA requires motor carriers under its jurisdiction to register with the agency,[8] and demonstrate it "is willing and able to comply with . . . . the minimum financial responsibility requirements established by the [Federal Motor Carrier Safety Administration (FMCSA)]."[9] Pursuant to the statute, the FMCSA promulgated regulation requiring certain motor carriers to provide proof of financial responsibility.[10] Carriers may satisfy this requirement by:

> (1) "Endorsement(s) for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980" (Form MCS–90) issued by an insurer(s);
>
> (2) A "Motor Carrier Surety Bond for Public Liability Under Section 30 of the Motor Carrier Act of 1980" (Form MCS–82) issued by a surety; or
>
> (3) A written decision, order, or authorization of the Federal Motor Carrier Safety Administration authorizing a motor carrier to self-insure under § 387.309, provided the motor carrier maintains a

---

[4] *Story Motion* ¶ 2; Dkt. 17-1, *Appendix of Evidence in Support of Defendant Story's Motion for Summary Judgment* (*Story Exhibits*) at 5–6, *Exhibit B* (*Articles of Incorporation for Riveras Trucking Inc.*).

[5] Dkt. 17-1, *Exhibit O* (*Money Judgment in Favor of Plaintiff and Against Defendants Jose W. Rivera and Riveras Trucking, Inc.*) (*Default Judgment*) at 68–72.

[6] *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 873 (10th Cir. 2009); *see also* Motor Carrier Act of 1980, Pub. L. No. 96-296, 94 Stat. 793 (1980).

[7] *Id.*

[8] 49 U.S.C. § 13901(a).

[9] *Id.* § 13902(a)(1)(A)(vi).

[10] 49 C.F.R. § 387.7(d).

> satisfactory safety rating as determined by the Federal Motor Carrier Safety Administration under part 385 of this chapter.[11]

This proof requirement only applies to "for-hire motor carriers operating motor vehicles transporting property in interstate or foreign commerce."[12]

The MCS-90 endorsement "provides that the motor carrier's insurer 'agrees to pay, within the limits of liability . . ., any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of ... the [MCA]'" regardless of whether the specific vehicle involved in the accident was included in the insurance policy.[13] Accordingly, the MCS-90 endorsement functions as a "safety net that covers the public in the event other insurance coverage is lacking."[14]

Courts disagree about when the MCS-90 endorsement's coverage is triggered. The majority of courts follow a trip-specific standard limiting coverage to "vehicles only when they are presently engaged in the transportation of property in interstate commerce."[15] Other courts have rejected the trip-specific approach and apply a general standard: coverage extends when a motor-carrier generally engages in for-hire transport of property in interstate or foreign

---

[11] *Id*.

[12] *Id.* § 387.3(a).

[13] *Herrod v. Wilshire Ins. Co.,* 499 Fed. App'x 753, 755 (10th Cir. 2012) (unpublished) (quoting 49 C.F.R. § 387.15).

[14] *Id.* at 756 (quoting *Yeates*, 584 F.3d at 874).

[15] *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 249 (5th Cir. 2010); *see also Nat'l Specialty Ins. Co. v. Martin-Vegue*, 644 Fed. App'x. 900, 907 (11th Cir.) (applying the trip-specific approach); *Century Indem. Co. v. Carlson*, 133 F.3d 591, 599 (8th Cir. 2008) (requiring the hauled-product be in interstate commerce "at the time of the accident"); *Herrod*, 499 Fed. App'x at 760; *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 57–60 (2d. Cir. 2010) (applying the trip-specific approach to determine whether an MCS-90B—an endorsement provided to passenger carriers which is identical to an MCS-90—covered an accident).

commerce, regardless of the purpose of the specific trip during which an accident occurred.[16] The Tenth Circuit has not issued a binding decision on this issue.

## II. The Collision

On February 27, 2017, Riveras Trucking purchased a commercial auto insurance policy (the Policy) from County Hall.[17] The Policy covered two vehicles: a 2010 Cascadia 125 Freightliner (VIN 1FUJGLDR9ASAK3580) and a 2004 Hyundai Steel Industries Trailer (VIN 3H3V532C44T151015).[18] In addition to the Policy, County Hall issued Riveras Trucking an MCS-90 endorsement for $750,000.[19] The endorsement includes the following statement:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment received against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.[20]

On March 29, 2017, Riveras Trucking registered with the FMCSA as an interstate, for-hire, general freight motor carrier.[21] Two days later, Riveras Trucking registered a 2009

---

[16] *See Royal Indem. Co. v. Jacobsen*, 863 F. Supp. 1537, 1541 (D. Utah 1994) ("In the court's view, Royal's "trip specific" reading of the Holdens' ICC endorsement (or any ICC endorsement for that matter) is incorrect."); *Canal Ins. Co. v. YMV Transp., Inc*., 867 F. Supp. 2d 1099, 1110 (W.D. Wash. 2011) (stating "the applicability of MCS-90 should not turn on the particular cargo that a vehicle is carrying on the date in which it is involved in a collision").

[17] Dkt. 17-1, *Exhibit C* (*Auto Policy*) at 7–25.

[18] *Id.* at 12, 14.

[19] Dkt. 17-1, *Exhibit E* (*MCS-90*) at 28–31.

[20] *Id.* at 30.

[21] Dkt 17-1, *Exhibit A* (*MCS-150 Registration*) at 3–4.

Freightliner (VIN 1FUJGLDR79LAF2822) with the State of Utah, a vehicle owned by Jose Rivera's brother, Raul.[22] This vehicle was not listed on the Policy.[23]

On August 15, 2017, Jose Riveras was involved in a vehicular collision with Story (the Collision).[24] At the time of the incident, Jose was driving the uninsured 2009 Freightliner.[25] Jose told the FMCSA accident investigator that the truck was owned by and being operated on behalf of Raul's company, RRA Trucking, LLC.[26] This information was untrue, as the truck was in fact registered with Riveras Trucking and being operated on its behalf.[27] The FMCSA later updated its accident assignment record to correct the discrepancy.[28] On April 26, 2018, Jose Riveras informed the FMCSA it was ceasing interstate operations and would only be operating within Utah going forward.[29]

## III. State Court Litigation

On April 7, 2021, Story filed a complaint in state court asserting tort claims against Jose and Raul Riveras, Riveras Trucking, and RRA Trucking for injuries arising from the Collision.[30] Jose Riveras and Riveras Trucking failed to respond or appear, and on June 16, 2021, the court entered a default certificate against them.[31] On January 5, 2022, Raul Riveras and RRA Trucking filed a third-party complaint against County Hall, alleging County Hall breached its

[22] Dkt. 17-1, *Exhibit F* (*State of Utah Registration Card*) at 32–33.

[23] *See Auto Policy*.

[24] Dkt. 17-1, *Exhibit I* (*FMCSA DataQs*) at 47–49.

[25] *Id.* at 48.

[26] *Id.*

[27] *Id.*

[28] *Id* (listing the Carrier Name as RRA Trucking LLC).; Dkt. 17-1, *Exhibit J* (*Safety Measurement System Report*) at 50–53 listing the Carrier Name as Riveras Trucking).

[29] Dkt. 17-1, *Exhibit K* (*Detachment Request*) at 54–55.

[30] Dkt. 17-1, *Exhibit H* (*State Court Complaint*) at 37–46.

[31] Dkt. 17-1, *Exhibit M* (*Default Certificate*) at 62–64.

contract with Jose and Riveras Trucking by declining to cover the insurance claims and refusing to defend Jose and Riveras Trucking against Story's complaint.[32] Story subsequently filed a motion to intervene in the third-party complaint,[33] which Utah Third District Court Judge Robert Faust granted.[34] On February 8, 2022, County Hall filed a motion to dismiss, or, in the alternative, motion for summary judgment against the third-party complaint.[35] In response, Story filed a notice of joinder to join RRA and Raul Riveras's opposition to County Hall's motion.[36] Story also requested an opportunity to participate in the oral argument on the Motion.[37]

On May 4, 2022, Judge Faust granted County Hall's motion.[38] Judge Faust first found that the 2009 Freightliner involved in the Collision was not covered under the Policy, and RRA and Raul Rivera were not beneficiaries of the Policy.[39] Next, the court concluded the MCS-90 endorsement did not apply.[40] Applying the trip-specific approach, Judge Faust found that "there was no evidence that the subject semi-tractor was operating as a for-hire motor carrier at the time of the accident[,]" nor was there evidence showing "Jose Rivera and Riveras Trucking were transporting property in interstate or foreign commerce or transporting hazardous materials at the

---

[32] Dkt. 31-2, *Third-Party Complaint*.

[33] Dkt. 31-3, *Intervenor's Motion to Intervene*.

[34] *Id.* at 15–16.

[35] Dkt. 31-4, *Motion to Dismiss Third-Party Complaint (or, in the Alternative, Motion for Summary Judgment)* (*County Hall State Motion to Dismiss*).

[36] Dkt. 34, *Intervenor's Notice of Joinder to Third-Party Plaintiffs' Opposition to Third-Party Defendants' Motion to Dismiss (or, in the Alternative, Motion for Summary Judgment)* (*Joinder Notice*).

[37] *Id.* at 4.

[38] Dkt. 35, *Order Denying Defendants' Raul Rivera's and RRA Trucking LLC's Motion for Summary Judgment and Granting County Hall Insurance Company's Motion to Dismiss or Motion for Summary Judgment* (*Faust Order*). The Order also denied third-party plaintiffs' Raul Rivera and RRA Trucking's motion for summary judgment against County Hall.

[39] *Id.* at 5.

[40] *Id.*

time of the incident."[41] Accordingly, Judge Faust granted County Hall's Motion for Summary Judgment and "dismissed [County Hall] from this action without prejudice."[42]

On October 10, 2025, Judge Faust issued default judgment in Story's favor against Jose Riveras and Riveras Trucking and awarded Story $1,509,011 in damages and prejudgment interest.[43] Story has not collected any portion of the judgment from either Jose Riveras or Riveras Trucking.[44]

**PROCEDURAL HISTORY**

On October 29, 2025, County Hall filed its Complaint in this court.[45] County Hall seeks declaratory relief establishing "there is no coverage under the Policy for the Story default judgment" because: (1) the 2009 Freightliner is not a covered vehicle under the Policy; (2) Jose Riveras and Riveras Trucking violated the Policy's cooperation requirement; (3) Jose Riveras and Riveras Trucking intentionally concealed material information about the Collision.[46] County Hall further requests a declaration that it does not owe any obligation for the Riveras default judgment under the MCS-90 endorsement, and it has "no obligation to pay the $1.5 million default judgment entered against Jose Riveras and Riveras Trucking."[47] On February 4, 2026, Story filed its Motion for Summary Judgment seeking a "judgment requiring County Hall Insurance Company to pay $750,000 under its MCS-90 endorsement."[48] On March 11, 2026,

---

[41] *Id.* at 5–7.

[42] *Id.* at 3, 8.

[43] Default Judgment.

[44] Dkt. 17-1, *Exhibit P* (*Declaration of Kenneth I. Denos in Support of Defendant Story's Motion for Summary Judgment*) at 73–75.

[45] *Complaint*.

[46] *Id.* at 13.

[47] *Id.*

[48] *Story Motion* at 17.

County Hall filed its Cross-Motion for Summary Judgment requesting the court "issue a declaration that the MCS-90 Endorsement issued by County Hall to [Riveras Trucking] does not apply to Mr. Story's judgment for damages."[49] The court heard oral argument on July 30, 2026.[50] At oral argument, the court order the parties submit additional briefing on whether the court should apply issue preclusion to Judge Faust's Order. The issue is fully briefed and ripe for review.[51]

**LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[52] A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[53] A fact is material if, under the governing substantive law, it could "affect the outcome of the suit."[54] At summary judgment, the court does not "weigh the evidence and determine the truth of the matter" but "determine[s] whether there is a genuine issue for trial."[55] When applying this standard, the court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party."[56] "However, unsupported conclusory allegations do not

---

[49] *County Hall Motion* at 13.

[50] Dkt. 46, *Minute Entry*.

[51] *Story Motion; Story Opposition*; Dkt. 41, *Defendant Story's Reply in Support of His Motion for Summary Judgment* (*Story Reply*); *County Hall Motion*; Dkt. 42, *Defendant Story's Opposition to Plaintiff's Cross-Motion for Summary Judgment* (*County Hall Opposition*); Dkt. 43, *Plaintiff's Reply Memorandum in Support of Cross-Motion for Summary Judgment* (*County Hall Reply*); Dkt. 47, *Defendant Ruben Story's Supplemental Brief Regarding Issue Preclusion* (*Story IP Brief*); Dkt. 50, *Plaintiff's Reply Brief Regarding Issue Preclusion* (*Story IP Reply*); Dkt. 48, *Plaintiff's Supplemental Brief Regarding Issue Preclusion* (*County Hall IP Brief*); Dkt. 49, *Defendant Ruben Story's Response to Plaintiff's Supplemental Brief Regarding Issue Preclusion* (*County Hall IP Reply*).

[52] Fed. R. Civ. P. 56(a).

[53] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[54] *Id.* at 248; *see also United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) ("The substantive law of the case determines which facts are material.") (citation omitted).

[55] *Liberty Lobby*, 477 U.S. at 249.

[56] *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008) (citation omitted).

create a genuine issue of fact."[57] To defeat a motion for summary judgment, an opposing party's evidence "must be based on more than mere speculation, conjecture, or surmise."[58]

When a party who will bear the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case[,] . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[59] Therefore, the movant who will not bear the burden of persuasion at trial may "make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[60]

Finally, in reviewing cross-motions for summary judgment, each motion is to be evaluated separately.[61] "[T]he denial of one [motion] does not require the grant of another."[62]

**DISCUSSION**

The court considers whether res judicata applies to Story's claims against County Hall and then whether either party establishes there is no genuine dispute to material facts surrounding the application of the correct standard. The court concludes issue preclusion applies and requires the court to apply the trip-specific standard, and Story fails to make a sufficient showing to establish Riveras Trucking was operating as a for-hire carrier transporting products in interstate commerce when the Collision occurred. Because Story does not establish that the

[57] *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011) (citation modified).

[58] *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citation omitted).

[59] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[60] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

[61] *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

[62] *Id.*

MCS-90 coverage was triggered, the court denies his Motion and grants summary judgment in favor of County Hall.

## I. Res Judicata

County Hall argues res judicata bars relitigating "the issue of whether County Hall is required to pay for Mr. Story's damages under the MCS-90 Endorsement,"[63] and federal law requires Story to show Riveras Trucking was engaged in for-hire transport of interstate commerce at the specific time of the accident.[64] County Hall argues summary judgment should be granted in its favor because Story cannot show the nature and purpose of Riveras' trip at the time of the Collision.[65]

Story, meanwhile, argues res judicata is inapplicable because Judge Faust's decision dismissing the third-party complaint was made *without* prejudice,[66] and the court should not apply the trip-specific approach.[67] Story further contends the undisputed facts establish County Hall is obligated to pay the MCS-90 coverage under the general standard.[68]

Federal courts must give state court judgments "full faith and credit."[69] The court is therefore required "to look first to state preclusion law in determining the preclusive effects of a state court judgment."[70] Under Utah law, "the doctrine of res judicata embraces two distinct branches: claim preclusion and issue preclusion. Claim preclusion corresponds to causes of

---

[63] *County Hall Motion* at 10; *see also County Hall IP Brief* at 1–2.

[64] *County Hall Motion* at 8–9.

[65] *Id.* at 9; *County Hall Reply* at 19–20.

[66] *County Hall Opposition* at 8–11, *Story Reply* at 7–10.

[67] *County Hall Opposition* at 11–15; *Story Reply* at 10–15.

[68] *Story Motion* at 16–17; *Story Reply* at 15–19; *County Hall Opposition* at 16–20.

[69] 28 U.S.C. § 1738.

[70] *See Thournir v. Meyer*, 803 F.2d 1093, 1094 (10th Cir. 1986) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985)) ("[Section] 1738 requires a federal court to look first to state preclusion law in determining the preclusive effects of a state court judgment.").

action; issue preclusion corresponds to the facts and issues underlying causes of action."[71] In its initial briefs, County Hall conflates these related legal doctrines, arguing for issue preclusion while applying the standard for claim preclusion.[72] The court therefore considers preclusion under both doctrines, and concludes only issue preclusion applies.

*A. Claim Preclusion*

The court first evaluates whether claim preclusion bars Story from bringing his claims against County Hall. "Claim preclusion is premised on the principle that a controversy should be adjudicated only once."[73] The doctrine generally "bars a party from prosecuting in a subsequent action a claim that has been fully litigated previously."[74] A party seeking to preclude an opposing party's claim must establish three elements: (1) the cases "involve the same parties or their privies;" (2) the claim was "presented in the first suit or [is] one that could and should have been raised in the first action;" and (3) "the first suit . . . resulted in a final judgment on the merits."[75] The court examines each element in turn.

1. Identical Parties.

Here, the parties are the same as those that litigated the state court action before Judge Faust.[76] Story initiated the state court case against Jose and Raul Riveras, Riveras Trucking, and

---

[71] *Mack v. Utah State Dep't of Com., Div. of Sec.*, 2009 UT 47, ¶ 29, 221 P.3d 194 (citation modified).

[72] *See County Hall Motion* at 10–12; *County Hall Reply* at 11–14. Most Utah courts regard the doctrines of claim and issue preclusion as two different components under the general theory of res judicata. *See id.* County Hall seeks to use "res judicata to *the issue* of whether County Hall is required to pay Mr. Story damages under MCS-90," but it cites cases concerning only claim preclusion. *See County Hall Motion* at 10–12; *Story Opposition* at 17–20. It also mistakenly cites to federal law when state law controls. *See County Hall Motion* at 10–12; *Story Opposition* at 17–20. In his initial response, Story argues only claim preclusion and does not discuss issue preclusion. *See County Hall Opposition* at 8–11; *Story Reply* at 7–10.

[73] *Nebeker v. Utah State Tax Comm'n*, 2001 UT 74, ¶ 23, 34 P.3d 180 (internal quotation marks and citation omitted).

[74] *Snyder v. Murray City Corp.*, 2003 UT 13, ¶ 34, 73 P.3d 325 (quoting *Miller v. USAA Cas. Ins. Co.*, 2002 UT 6, ¶ 58, 44 P.3d 663).

[75] *Miller*, 2002 UT 6, ¶ 58 (quotation marks and citation omitted).

[76] *See Joinder Notice*.

RRA Trucking for injuries arising from the Collision.[77] Raul Riveras and RRA Trucking subsequently filed a third-party complaint against County Hall, which County Hall moved to dismiss.[78] Story elected to join the Raul Riveras and RRA Trucking in opposing County Hall's motion and sought an opportunity to defend the third-party complaint at oral argument.[79] Accordingly, the first element of identical parties is met.

2. Previously Presented Claim

The underlying claim in this action was presented in the State court matter. There, Story and the other third-party plaintiffs sought to compel County Hall to pay for damages resulting from the Collision under the MCS-90 Endorsement it issued to Riveras Trucking.[80] Here, County Hall is seeking declaratory relief that the claims against it are not covered under the MCS-90 Endorsement to Riveras Trucking.[81] Because the claims in both instances revolve around whether County Hall is liable for the collision under its MCS-90 Endorsement, the second element of claim preclusion is met.

3. Final Judgment on the Merits

The final element of claim preclusion is whether the Faust Order constituted a final judgment on the merits. "A judgment or order, once rendered, is final for purposes of res judicata until reversed on appeal or modified or set aside in the court of rendition."[82] However, "as a general proposition, a judgment which by its terms purports to be 'without prejudice' does

---

[77] Dkt. 17-1, *Exhibit H* (*State Court Complaint*) at 37–46.

[78] *County Hall State Motion to Dismiss*.

[79] *See Joinder Notice*.

[80] *See id.* at 3–4; *see also Third-Party Complaint* at 4–7.

[81] *Complaint* at 13.

[82] *Copper State Thrift & Loan v. Bruno*, 735 P.2d 387, 390 (Utah Ct. App. 1987).

not operate as a final judgment on the merits in the claim preclusion context."[83] County Hall argues the Faust Order constitutes a final judgment on the merits because Story did not appeal the adverse decision.[84] County Hall further argues the Faust Order is final because summary judgment "dismissals are always on the merits in light of the elements of Rule 56."[85] Story contends the Faust Order is not final for purposes of claim preclusion because County Hall was dismissed from the case "without prejudice," meaning the decision "has no preclusive effect, whether res judicata or claim preclusion."[86] The court agrees claim preclusion does not apply.

In the State court matter, Judge Faust applied the trip-specific standard in concluding "Jose Rivera and Riveras Trucking must have been operating as a for-hire motor carrier at the time of the accident" in order for the "MCS-90 Endorsement to apply."[87] Judge Faust stated:

> the Parties have failed to put forward any evidence that Jose Rivera and Riveras Trucking were acting as a for-hire motor carrier at the time of the accident. Without [such] proof . . . there is no genuine dispute regarding the material facts, and the Court holds, as a matter of law, that the MCS-90 Endorsement does not apply to the alleged incident, *at this time*."[88]

Judge Faust proceeded to dismiss County Hall from the third-party complaint "without prejudice."[89] The general rule that dismissals without prejudice do not have preclusive effect for purposes of claim preclusion applies here. Judge Faust dismissed the claims against County Hall because *at that time* no evidence was presented indicating Jose Riveras and Riveras Trucking were operating as a for-hire motor carrier transporting products in interstate commerce when the

---

[83] *Haskell v. Wakefield & Assocs. Inc.*, 2021 UT App 123, ¶ 16, 500 P.3d 950 (citation modified).

[84] *County Hall Motion* at 11.

[85] *Story IP Reply* at 4 (citing *ShipEx Logistics, LLC v. Brady*, 2022 UT App. 118 ¶¶ 11–14, 519 P.3d 1286).

[86] *County Hall Opposition* at 10.

[87] *Faust Order* at 6.

[88] *Id.* at 6 (emphasis added).

[89] *Id.* at 8.

Collision occurred.[90] Dismissing the action without prejudice allows Story to recommence his claim against County Hall if new facts later emerge. Applying claim preclusion to the Order would undercut Judge Faust's decision to leave the door open to future claims should additional evidence be discovered.

While it is true that under Utah law "a grant of summary judgment is always *with* prejudice[,]"[91] County Hall never sought to correct Judge Faust's error in granting summary judgment *without* prejudice. County Hall did not seek relief from judgment under Utah Rule of Civil Procedure 60(b)(1), nor did it appeal Judge Faust's decision. In light of the uncorrected error and Judge Faust's clear intent to permit Story to bring suit against County Hall should new evidence arise, the court will not apply claim preclusion to foreclose this option.

### *B. Issue Preclusion*

The court now turns to whether issue preclusion applies. Issue preclusion, otherwise known as collateral estoppel, "prevents parties or their privies from relitigating facts and issues in the second suit that were fully litigated in the first suit."[92] Issue preclusion is meant to "(1) preserv[e] the integrity of the judicial system by preventing inconsistent judicial outcomes; (2) promot[e] judicial economy by preventing previously litigated issues from being relitigated; and (3) protect[] litigants from harassment by vexatious litigation."[93] In order for issue preclusion to apply, the party invoking preclusion must show the following four elements:

> (i) the party against whom issue preclusion is asserted [was] a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication [was] identical to the one presented in the instant action; (iii) the issue in the first action [was]

---

[90] *Id.* at 6.

[91] *Brady*, 2022 UT App 118, ¶ 11 (emphasis added).

[92] *Buckner v. Kennard*, 2004 UT 78, ¶ 12 , 99 P.3d 842 (quotation marks and citation omitted).

[93] *Id.* ¶ 14 (quoting *Collins v. Sandy City Bd. of Adjustment*, 2002 UT 77, ¶ 12, 52 P.3d 1267).

> completely, fully, and fairly litigated; and (iv) the first suit . . . resulted in a final judgment on the merits.[94]

The first element is identical to that of claim preclusion, which the court has already determined is satisfied. The court next considers the remaining three elements separately and concludes they are also met.

1. The Issue

Before addressing the elements, the court must first define what issue is being considered for preclusion. County Hall seeks to preclude "the issue of whether County Hall is required to pay Mr. Story damages under the MCS-90 Endorsement."[95] However, Judge Faust did not make such a determination. Judge Faust simply held that at the time of his decision, "(i) there [was] no evidence sufficient to prove that the subject tractor was transporting property for hire in interstate commerce and (ii) there [was] no unsatisfied judgment against Jose Rivera or Riveras Trucking."[96] Judge Faust intentionally held open the possibility that County Hall could be held liable under the MCS-90 Endorsement should new evidence arise showing for-hire transport of property in interstate commerce.[97] Granting issue preclusion so broadly as requested by County Hall would be tantamount to applying claim preclusion against any claim Story may bring against the insurance company, which the court previously established is not applicable here. The correct issue the court considers for issue preclusion is the application of the trip-specific

---

[94] *Oman v. Davis Sch. Dist.*, 2008 UT 70, ¶ 29, 194 P.3d 956; *Zufelt v. Haste*, 2006 UT App 326, ¶ 9, 142 P.3d 594) ("The burden of establishing each of the elements of res judicata is on . . . the party invoking the doctrine").

[95] *County Hall Motion* at 10; *see also County Hall IP Brief* at 1–2 ("[T]he Court should determine that Mr. Story's demand that County Hall pay him $750,000 under the MCS-90 Endorsement issued by County Hall is precluded under the doctrine of issue preclusion.").

[96] *Faust Order* at 5.

[97] *See id.* at 3 (holding "Defendants may seek to amend their pleadings to bring claims against County Hall if, but only if, new evidence is uncovered that could support a factual determination that would warrant coverage under the . . . MCS-90 endorsement").

standard. Judge Faust relied on this standard—and not the general standard—in finding there was insufficient evidence to establish the MCS-90 Endorsement applied to the Collision.[98]

Issue preclusion applies only when "the issue that was actually litigated in the first suit was essential to resolution of that suit and is the same factual issue as that raised in a second suit."[99] Story argues the issues decided are not identical because the 2021 suit he filed against Jose Riveras and Riveras Trucking asserted claims for negligence, respondeat superior, and joint enterprise, and "[t]he nature of the trip, its destination, purpose, are not essential or even relevant to establishing a motor vehicle crash liability."[100] Rather, "[i]ssues of insurance coverage and the MCS-90 [Endorsement] are issues of collectability assuming a judgment is entered from Mr. Story's perspective and one of indemnity from the tortefasors' perspective."[101] County Hall contends that while the initial 2021 personal injury suit does not implicate the nature of the trip, destination, or purpose, these issues became material when RRA Trucking filed its third-party indemnity complaint against County Hall and Story elected to intervene in that action.[102]

The court agrees with County Hall that the decision to apply the trip-specific standard was essential to Judge Faust's decision. The action in which Judge Faust decided to apply the trip-specific standard was not the personal injury complaint Story initially filed against the trucking defendants, but the third-party indemnity complaint that Story elected to join. The question of insurance and MCS-90 coverage was therefore directly at issue in the case. In resolving the question, Judge Faust specifically applied the trip-specific standard—and not the general standard—in determining that the conditions necessary to trigger the coverage were not

[98] *Id.* at 5–7.

[99] *Robertson v. Campbell*, 674 P.2d 1226, 1230 (Utah 1983).

[100] *Story IP Brief* at 3–4.

[101] *Id.*

[102] *Story IP Reply* at 2–3.

met.[103] The entirety of Judge Faust's analysis discussing the applicability of the MCS-90 is devoted to analyzing whether the evidence showed Riveras Trucking was engaged in for hire transport of goods in interstate commerce at the time of the Collision.[104] If Judge Faust had chosen to apply the general standard, he may have concluded that Riveras Trucking was generally engaged in for-hire transport of instate commerce which would have yielded the opposite outcome. Accordingly, the decision to apply the trip-specific standard was essential to his Order.

2. Completely, Fully, and Fairly Litigated

The third element for issue preclusion concerns whether the issue was "completely, fully, and fairly litigated."[105] To satisfy this requirement, "the parties must [have] receive[d] notice reasonably calculated, under all the circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections."[106] An issue is fully litigated only if it was "actually asserted and tried in the other case."[107] Story argues the MCS-90 Endorsement issue was not fully and fairly litigated because "RRA Defendants had no standing regarding Riveras Trucking's insurance policy and no standing with respect to the MCS-90. . . . Story had no ripe claim under the MCS-90 [Endorsement], as that required a final negligence judgment first."[108] Further, Story contends he "merely did a notice of concurrence in the unripe peripheral factual and legal issues raised by RRA Defendants . . . [and] had no motive or incentive to fully

---

[103] *Faust Order* at 5–7.

[104] *Id.*

[105] Oman, 2008 UT 70, ¶ 29.

[106] *Career Serv. Rev. Bd. v. Utah Dep't of Corr.*, 942 P.2d 933, 939 (Utah 1997) (quotation marks and citation omitted).

[107] *Schaer v. Utah Dep't of Transp.*, 657 P.2d 1337, 1341 (Utah 1983) (citation modified).

[108] *Story IP Brief* at 4; *County Hall IP Reply* at 3.

litigate claims and underlying facts that had nothing to do with his obtaining a judgment against the tortfeasors."[109] County Hall counters that Story's intervention, opposition to County Hall's Motion for Summary Judgment, and subsequent decision not to appeal provided him with a complete, full, and fair opportunity to litigate the issue.[110]

The court concludes the issue was completely, fully, and fairly litigated. While Story makes a strong case that the MCS-90 Endorsement issue was not ripe when it was initially considered, Judge Faust did not make such a ruling. Judge Faust implicitly concluded the MCS-90 Endorsement issue was ripe for review in ruling on the merits of the question. At that point, Story was free to appeal the decision on ripeness grounds, but he elected not to. Story provides no authority—and the court is aware of none—which holds issue preclusion does not apply when the issue was unripe in the first suit though the decision was never challenged.

Nor is the court persuaded by Story's argument that he did not have an incentive to fully litigate the MCS-90 Endorsement issue. Story intentionally intervened in the third-party complaint against County Hall, though he had no obligation to do so.[111] He was allowed to join the third-party plaintiffs' brief in opposition to County Hall's motion to dismiss.[112] Story received fair notice of the pendency of the action and was afforded the opportunity to argue against the application of the trip-specific approach to the Collision. While Story might have thought it was not worthwhile to appeal Judge Faust's Order because it did not foreclose his

---

[109] *Story IP Brief* at 5.

[110] *Story IP Reply* at 3–4; *County Hall IP Brief* at 5.

[111] *See generally Intervenor's Motion to Intervene*.

[112] *See Joinder Notice*; *Faust Order* at 3. In his Joinder Notice, Story also requested the opportunity to participate in oral argument. *See Joinder Notice* at 4. Though he was granted the opportunity to intervene, it is unclear whether Story actually participated in oral argument.

ability to bring future suit, that does not provide grounds for concluding issues essential to that decision were not completely, fully, and fairly litigated. Accordingly, this element is met.

3. Final Judgment

Finally, the court considers whether Judge Faust's Order dismissing the complaint against County Hall without prejudice constitutes a final judgment for purposes of issue preclusion. While similar to the finality requirement for claim preclusion, the element is notably different in that a dismissal without prejudice may have issue-preclusive effect.[113] County Hall argues Story's decision not to appeal Judge Faust's Order made the Order final,[114] and the fact Judge Faust issued the Order without prejudice does not bar finality for purposes of issue preclusion.[115] The court agrees. "A judgment or order, once rendered, is final for purposes of res judicata until reversed on appeal or modified or set aside in the court of rendition." [116] Accordingly, Story's decision not to appeal Judge Faust's decision applying the trip-specific standard makes the Order final.

Story's two arguments to the contrary are unpersuasive. Story first contends that Judge Faust's Order was not final because the decision "was not directed at Mr. Story because he had no claim or interest in the issues at that time."[117] However, there is nothing in Judge Faust's Order indicating he only intended the Order to apply to certain parties to the litigation. Indeed, the Order distinguishes the "RRA Defendants"—Raul Rivera and RRA Trucking—but makes no

[113] *Haskell v. Wakefield & Assocs., Inc.*, 2024 UT App 123, ¶ 39 557 P.3d 245 (holding "while claim preclusion requires an earlier dismissal *with* prejudice, issue preclusion requires a less stringent version of finality that can be satisfied by an earlier dismissal *without* prejudice") (emphasis in original); *see also Oman*, 2008 UT 70, ¶¶ 30–31 (applying issue preclusion to a claim the court dismissed without prejudice).

[114] *County Hall Reply* at 13–14; *Story Opposition* at 18; *County Hall IP Brief* at 6.

[115] *County Hall Reply* at 15–16; *County Hall IP Brief* at 6.

[116] *Copper State*, 735 P.2d at 390.

[117] *Story IP Brief* at 5.

distinction in stating "Defendants may seek to amend their pleadings to bring claims against County Hall if, but only if, new evidence is uncovered . . . ."[118]

Story next argues Judge Faust's Order was not final because Story "did not and could not introduce the collateral and unripe issues into the underlying [personal injury/negligence] case."[119] Story relies on the Utah Supreme Court decision *Gudmundson v. Del Ozone*.[120] In *Gudmundson*, the Court concluded a finding in a worker's compensation adjudication that the plaintiff's injuries were not caused by ozone exposure did not have preclusive effect on a later suit against third parties defendants for negligent installation of equipment at the workplace.[121] The Court determined "[u]nder the unique facts of this case, . . . Ms. Gudmundson could not involve third-party defendants in her workers' compensation adjudication even if she had so desired" because "the Workers' Compensation Act is only available to remedy wrongs committed by employers or their agents."[122] The court therefore declined to extend preclusive effect to the worker's compensation court decision.[123]

*Gudmundson* is inapplicable here. First, the initial decision in *Gudmundson* was a workers' compensation administrative adjudication, not a state court of general jurisdiction as here. The Utah Supreme Court recognized that workers' compensation adjudications "may not have the same collateral-estoppel applications as other administrative adjudications."[124] Second,

[118] *Faust Order* at 2; *id.* at 1 (defining the RRA Defendants); *id.* at 4 ("There are genuine disputes of material facts regarding the extent of the RRA Defendants' liability); *id.* at 7 ("[T]he Parties have not put forward any evidence that Jose Rivera and Riveras Trucking were transporting property in interstate or foreign commerce at the time of the accident.").

[119] *Story IP Brief* at 5-6.

[120] 2010 UT 33, 232 P.3d 1059.

[121] *Id.* ¶¶ 27–38.

[122] *Id.* ¶ 38.

[123] *Id.*

[124] *Id.* ¶ 33 (citing *Stoker v. Workers' Comp. Fund of Utah*, 889 P.2d 409, 411 (Utah 1994)).

regardless of whether Story could introduce the MCS-90 Endorsement issue in the initial personal injury complaint, Judge Faust's Order addressed the third-party indemnity complaint in which Story intervened. Story directly involved himself in that action against County Hall, as opposed to the *Gudmendson* plaintiff who could not pursue litigation against the third-party defendants in her workers' compensation adjudication. Therefore, the court concludes Judge Faust's Order is final with regard to issue preclusion.

The purpose of the doctrine of issue preclusion is to "prevent parties or their privies from relitigating facts and issues in a second suit that were fully litigated in the first suit."[125] Here, the parties fully litigated the issue of which standard to apply for triggering MCS-90 coverage. Story was granted the opportunity to join the proceedings, argue against the application of trip-specific standard, and appeal the adverse decision should he have so desired. It would be both inefficient and prejudicial to County Hall to allow Story to relitigate the previously settled issue. Accordingly, the court finds res judicata applies and "Jose Rivera and Riveras Trucking must have been operating as a for-hire motor carrier at the time of the accident" to trigger the MCS-90 Endorsement.[126]

## II. The Summary Judgment Motions

The court now turns to the instant Motions to determine if either party has established there is "no genuine dispute as to any material fact" as to whether Riveras Trucking was operating as a for-hire motor carrier at the time of the Collision.[127] "To be a 'for-hire carriage,' a carrier must be in the business of transporting, for compensation, the goods or property of

[125] *Buckner*, 2004 UT 78, ¶ 12 (citation modified).

[126] *Faust Order* at 6 (citing *Herrod*, 499 Fed. App'x at 759).

[127] Fed. R. Civ. P. 56(a).

another at the time of the accident."[128] Both summary judgment motions turn on whether Story has provided sufficient evidence that the Freightliner was operating as a for-hire carrier engaged in interstate commerce at the time of the Collision.[129] Even drawing all inferences in favor of Story when considering the Motions, the court concludes he cannot prove this essential element for recovery under the trip-specific approach. Accordingly, the court concludes only County Hall has met its burden and is entitled to summary judgment.

*A. Story's Motion*

Story argues the undisputed facts establish Riveras Trucking was operating an interstate trip for hire at the time of the Collision.[130] To support his argument, Story relies on the following circumstantial evidence: (1) the FMCSA exercised its jurisdiction by issuing a safety measurement system accident report and DataQs update;[131] (2) Riveras Trucking's MCS-150 certification only lists it as an interstate trucking operator;[132] (3) Riveras Trucking's MC Detachment Request;[133] (4) the 2009 Freightliner's Utah registration for interstate operations;[134] and (5) a 2018 letter from County Hall's claim administrator acknowledging the vehicle had been in service since the Collision and "may be located anywhere in the contiguous US."[135]

[128] *Herrod*, 499 Fed. App'x at 760 (citation modified).

[129] *See Celotex*, 477 U.S. at 322–23 (holding when a party who will bear the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case[,] . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

[130] *Story Motion* at 12–15.

[131] *Id.* at 12–14.

[132] *Id.* at 14.

[133] *Id.* at 15.

[134] *Id.*

[135] *Id.*; *see also* Dkt. 17-1, *Exhibit N* (*County Hall Denial Letter*).

However, none of the evidence relied upon includes any information regarding the details or purpose of the specific trip at the time of the Collision.

The court first considers the FMCSA accident report[136] and the DataQs update to the accident report.[137] Story argues the fact FMCSA issued a report for the Collision necessarily indicates FMCSA exercised its jurisdiction "because the agency can only assign crashes to carriers operating under federal authority."[138] Story asks the court to take judicial notice of the DataQs pursuant to Federal Rule of Evidence 201(b)(2).[139] County Hall opposes judicial notice of the DataQs because the document contains hearsay statements made by Raul Rivera, and the contents are subject to dispute.[140]

Even if the court were to take judicial notice of the DataQs, the evidence does not support the conclusion that the specific trip involved in the Collision was for-hire and carrying products in interstate commerce. Neither document contains any details regarding the source, destination, or cargo of the Collision trip, nor do the documents include any information concerning a jurisdictional determination made by the FMCSA.[141] Though the FMCSA's jurisdiction only extends to interstate or international transportation,[142] Story provides no authority for the proposition that the fact the agency issued an accident report is conclusive evidence establishing a given trip was interstate. Further, the lack of any information regarding the specific trip makes

---

[136] *Safety Measurement System Report*.

[137] *FMCSA DataQs*.

[138] *Story Motion* at 13.

[139] *Story Motion* at 14; *see also* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[140] *County Hall Opposition* at 23–24.

[141] *See Safety Measurement System Report*; *FMCSA DataQs*.

[142] *See* 498 U.S.C. § 13501.

it impossible for a court to evaluate whether the FMCSA's jurisdictional assessment was correct. Because neither document speaks to the details of the specific trip, they do not support the conclusion the trip met the standards required to trigger MCS-90 coverage.

The other evidence likewise does not establish the specific trip was for-hire and carrying interstate commerce. The fact Riveras Trucking was registered as an interstate trucker at the time of the Collision does not demonstrate the Freightliner was engaged in a for-hire, interstate trip when the Collision occurred. It is possible that Riveras was travelling between destinations or was driving to or from a scheduled maintenance visit when the Collision occurred. In such circumstances, the trip would not be considered for-hire.[143] And Story does not establish that registration as a carrier for interstate operations precludes intrastate deliveries. Lastly, while the 2018 denial letter establishes the truck was in general use for interstate operations after the Collision, this does not mean a specific trip well prior to the letter must also have been an interstate operation. Because Story offers no competent evidence that the Freightliner was operating as for-hire and carrying interstate commerce at the time of the Collision, Story has not established an essential element of his claim. Accordingly, the court denies his Motion.

*B. County Hall's Motion*

The court now turns to County Hall's Motion. County Hall contends that, just as in the state court action, Story provides no evidence that Jose Riveras was operating as a for-hire carrier transporting interstate commerce on the specific trip at the time of the Collision.[144] According to County Hall, Story's circumstantial evidence at best shows Riveras Trucking was only generally engaged in interstate operations when the accident occurred.[145] The court agrees.

---

[143] *See Herrod*, 499 Fed. App'x at 760.

[144] *County Hall Motion* at 9; *County Hall Reply* at 19–20.

[145] *County Hall Reply* at 20.

While the evidence Story relies upon does show Riveras Trucking generally engaged in for-hire interstate operations in August 2017 when the Collision occurs, he provides no evidence discerning the details or purpose of the specific trip on August 15, 2017. Such facts are essential for Story to establish that the MCS-90 Endorsement was triggered and covers his injuries from the Collision.

Though Story has not provided any evidence showing the specific trip meets the necessary standard, neither has County Hall supplied evidence to establish the specific trip was not for hire nor transporting interstate commerce. The court recognizes that the parties have not conducted discovery in the action.[146] Federal Rule of Civil Procedure 56 provides "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery . . . ."[147] Story has not submitted an affidavit or declaration requesting discovery to uncover the missing details of the specific trip in question. In fact, only County Hall has acknowledged any need for discovery in this case.[148] Instead of seeking discovery, Story elected to rely on the current evidence in pursuing summary judgment. The record before the court does not provide any evidence demonstrating the specific trip at issue met the standard for triggering MCS-90 coverage. Without an affidavit or declaration from Story requesting discovery, the court will not deny or defer consideration of County Hall's Motion.

---

[146] *See generally Docket*.

[147] Fed. R. Civ. P. 56(d).

[148] *See County Hall Opposition* at 9–10 (stating "the lack of information concerning the purpose of Jose Rivera's trip at the time of the accident only highlights the need to conduct discovery in this case."); *see also Story Opposition* at 2 (acknowledging County Hall's statement on discovery but not itself requesting it).

## CONCLUSION

For the aforementioned reasons, the court DENIES Story's Motion,[149] and GRANTS County Hall's Motion.[150] The court issues summary judgment in favor of County Hall and declares that the MCS-90 Endorsement issued by County Hall to Riveras Trucks does not apply to Story's default judgment for damages from the August 15, 2017 collision. The court DIRECTS the Clerk of Court to close the case.

SO ORDERED this 14th day of September, 2026.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

[149] Dkt. 17.

[150] Dkt. 31.